4-4734

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISON

**ALEMAYEHU GETACHEW**

Plaintiff,

**4-25CV-645-0**

Civil Action No. _____



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 2 4 2025

CLERK, U.S. DISTRICT COURT
By_____ Deputy

**U.S SMALL BUSINESS ADMINSTRATION**

Defendant

## COMPLAINT

---

**ON, THE FIFTH, AND THE FOURTEENTH AMENDMENTS OF THE**

**U.S. CONSTITUTION, 42 U.S.C.A. § 1983   RACE AND COLOR**

**DISCRIMINATION; MISREPRESENTATION; PROVEN**

**PHYSICAL AND PSYCHOLOGICAL INJURIES UNDER**

**FEDERAL TORT CLAIMS ACT, ("FTCA") 28 U.S.C. § 1346(b)**

---

# I. PARTIES

1. Plaintiff Alemayehu Getachew "Plaintiff" is a citizen of Ohio presently located at the following address: 3982 Powell Road # 144, Powell, Ohio 43065.

2. The Defendant Small Business Administration ("SBA") main office is located at 309 3rd street, SW Washington, DC 20416 and it also operates a branch office at 14925 Kingsport Road, Fort Worth, Texas 76155.

# II. JURISDICTION

3. The Jurisdiction of this Court is invoked under 28 U.S.C. §1331, the Fifth Amendment, the Fourteenth Amendment of the U.S. Constitution; 42 U.S.C.A. § 1983 (Under Color of State Law) and The Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 2671-2680, Title 28 of the United States Code, Sections 2671 to 2680.

4. The Court's jurisdiction is further established because the "SBA" is a federal agency.

5. With reference to "Venue" the Court is perfectly proper because of the following supporting facts:

6. We need to break down the concept of venue in this district court, especially if there is a relevant "venue." In legal terms, a venue refers to the geographic location where a trial occurs. The determination of venue is influenced by factors such as **the location of the incident** or the residence or business location of either party involved. Henceforth, the court's "Venue" is established because ("SBA") is doing business at the 14925 Kingsport Road, Fort Worth, Texas

76155, address and this grants the Fort Worth Federal Court the authority to take the case.

7.  In federal courts, the general rule for venue suitability in a civil case is governed by 28 USC § 1391(b)

    What is the above section 1391(b) is about?

8.  According to § 1391(b) (i) and (ii), either any district where a defendant resides (if all defendants reside in the same state), or any district where a substantial part of the events or omissions_giving rise to the claim happened, or any district where a substantial part of the property that constitutes the subject of the claim is situated, would be proper.

9.  However, if none of the above applies, then any district court where the court has personal jurisdiction over the parties suffices personal jurisdiction. Personal jurisdiction refers to a court's authority to adjudicate the rights and liability of the defendant has certain minimum contacts with.

10. **THE PLACE** where the Defendant's violation occurred is the quintessential point in law and this Court has "Venue". Plaintiffs generally given so much difference in their choice of forum.

11. "SBA" has established specific minimum contacts with the forum were the Court is located. "SBA" is operating at 14925 Kingsport Road, Fort Worth, Texas 76155. The "SBA's" injurious letter regarding different treatment, attached as "Exhibit-1," originated from this address.

12. The federal court with jurisdiction over this case is situated at 501 West 10th Street, Fort Worth, TX 76102. The "SBA," who violated the Plaintiff's federally

protected rights, is conducting business in the district, which is only 23 miles from the court's address Henceforth, indisputably the Court has "venue".

13.    In addition, "Venue" is about transporting a lawsuit to Washington DC where The main office of "SBA" is located, if it must go to trial…TRIAL…

Excerpt:   TRIAL very unlikely  … 122 Yale L. J. 522 (2012-2013)

The Disappearance of Civil Trial in the United States. Since the 1930s the proportion of civil cases concluded at trial has declined from about 20% to below 2% in federal courts and below 1% in state courts. [The Yale Law Journal, John H. Langbein, Sterling Professor of Law and Legal History]

The Federal Agency" SBA" is a big shoulder and would not be affected by the venue. Therefore, the District Court has proper "Venue".

## III. NATURE OF THE CASE

14.    This case was filed in this Court on July 15, 2024, attached here as Exhibit-2 and it was dismissed without prejudice on the ground that the "Plaintiff" "Did not follow the Court's order." and "Timeliness of Response."

15.    The Plaintiff who is proceeding without counsel assistance appealed and filed his brief with twelve supporting literatures and the appeal court entered without reviewing the brief in a non-dispositive Court Order on March 14, 2025.

16.    This case is returning to this Court for a second time, with some changes that include a showing of injuries supported by a complete record.

17.    Unlike the previous complaint, the Plaintiff has provided a concise summary spanning forty years of events (How this case is getting here) which helps illuminate the totality of circumstances for the Court's consideration. The "Plaintiff" believes this approach is crucial for ensuring precise decision-making.

18.    The Supreme Court ruled in Roper v. Simmons (2005) that executing individuals for crimes committed before the age of 18 is unconstitutional, as it constitutes cruel and unusual punishment. This ruling, rooted in the Eighth Amendment, recognizes evolving standards of decency and the unique traits of youth, such as immaturity, susceptibility to influence, and the capacity for change. The Court highlighted one affecting variable that prosecutors overlook: "AGE."

19.    This situation serves as an example of considering "totality of circumstances." The more we control the influencing variables, the highest the decision's precision is

20.    That has been said the dismissal order that was grounded on the "Plaintiff's failure to follow the Court's order." and "Timeliness of Response" was not correctly conceived. The Plaintiff has stated that he did not fail to comply with the court order.

21.    The issue arose from a misunderstanding regarding timing, as communication between the Court and the Plaintiff was conducted via US mail, which took a significant amount of time. Consequently, the actions taken by the District Court occurred rapidly, leading to the Court's decision regarding the "failure to comply with a court order" and issues related to "timeliness of response," which were

beyond the Plaintiff's control. The Plaintiff is a responsible individual who was unable to keep pace with the Court's swift process at the time. Furthermore, the Plaintiff has been proceeding without counsel assistance and respectfully requests that the Court allow his compliant to proceed.

22. The other area the Plaintiff to explore is how this case is able to get here is explained below.

23. The Court's "Jurisdiction" and "venue" is discussed above and is proper and the "Court also allowed the "Plaintiff" to refile his case" and thanked for that and also the "Plaintiff" prefer this Court because the Plaintiff-Texas relation is explained below.

24. The "Plaintiff" has a significant connection to Texas, unlike others. In 1990, he moved to **Texas** from his former country. Most of "Plaintiff's" relatives and friends live in **Texas.** He obtained his U.S. citizenship while residing in **Texas**. The "Plaintiff" considers **Texas** as home. The Plaintiff purchased his first food store business in **Texas**, He confronted an armed store robbery in **Texas.** Two years after the said traumatic episode the "Plaintiff's" business partner, Tadese Gobena, was killed during a robbery at our store in **Texas.** "SBA's" bias letter written by federal government agent Mr. Richard LaPrad originated in **Texas.,** the "Plaintiff" choice of Federal Courts was from **Texas,** Correspondence regarding the "Let Us Build the Wall" initiative from authorities came from **Texas**, the motto of "**Let Us Make Texas-Texas**" also caught the plaintiff's attention was generated from **Texas**. In addition, emails from business groups

6

encouraging the "Plaintiff" to participate in Texas's further development in all spheres was coming from **Texas.** Texas and Texas and then Texas.

25.     In the final analysis, a reasonable person, considering the circumstances outlined above, can confidently say that **"Texas is calling"** and that the "Plaintiff" has been humbled and has **accepted this call**.

26.     The "Plaintiff" hopes that justice will be served in **Texas** because in an idiomatic expression **"All roads leads to Texas"** and the "Plaintiff" is not making it but….. in his work "Worship" (2021), Michael W. Smith referred to this concept of an "Awesome God".

27.     The connection between Texas and the "Plaintiff" began in his early teens (1972-1975) when he watched Western movies featuring Texan actors and reflecting Texas culture. These films were highly entertaining, and excerpts from some of the actual movies which is attached hereto as Exhibit-3 this relationship, though developed over time, has lasted for an impressive five decades. The Fort Worth Stockyards, a National Historic District in Fort Worth, Texas, reflects that heritage which is attached hereto as Exhibit 4.

28.     That been said about the "Plaintiff's" Texas ties then the other side of this presentation is asking the Court to consider the "totality of circumstances," for a favorable decision. The "Plaintiff" is summarizing his past activities back 40 years with brief discussion for the court's consideration, with the aim of moving forward and achieving the ultimate goal of serving justice.

29.  If the honorable Judge is not interested in reading the Plaintiff's activities for the past four decades, the "Plaintiff" respectfully requests to skip from Number 30 to Number 37. Furthermore, please continue with Number 38 on Page 9.

30.  In the mid-1980s, the War led by rebels intensified significantly in his former country "Ethiopia". At the time the "Plaintiff" was working as a program executive with a team of four at an Ethiopian television station and he left the station in 1987 after declining an offer to join a political activity that aimed to promote Eastern ideology.

31.  In the late 1980s, the "Plaintiff" was working as a guidance counselor in a small-town high school. Life in that small town was characterized by a rebel group that shelled the area at night. We could hear heavy artillery fire, and we felt threatened. Despite this danger, daytime life continued as usual, which was quite puzzling. The rebels employed "hit and run" war tactics, aiming to destabilize the region to topple the military government located about 100 miles away in the nation's capital.

32.  In a related story, my relative Ayalneh Abebe "Abebe" was the General Manager of Civil Aviation for Ethiopian Airlines. He worked alongside Engineer Mohammed Ahmed, the airline's CEO, to remove political slogans with anti-Western rhetoric from the airport. Additionally, a credible rumor circulated among employees at Ethiopian Television, where I was employed at the time. By the end of 1988, the controversial banner had been removed. The political theories of Glasnost (transparency) and Perestroika (restructuring) helped to ease the Eastern Bloc's control over the world.

8

33.    In addition, Mr. "Abebe" assisted the U.S. embassy by helping with their transportation needs. He was often called to manage their flights, and he would wait for them at the Addis Ababa International Airport, offering a warm welcome to ensure they felt comfortable when arriving or departing. This was particularly true from year 1983 to year 1991, a time when the U.S. embassy was well aware of his support.

34.    As a result of these collective efforts, the expansion of democracy in the 1990s can be traced back to the groundwork laid during this period, many contributions, some never valued or noticed.

35.    As mentioned in paragraph 30, the rebels intensified guerrilla fighting, which forced the Plaintiff to leave his home country.

36.    The Plaintiff successfully immigrated to Dallas, Texas, in 1990, thanks in part to a TIME magazine article detailing the events in the small town where the "Plaintiff" had been working as a counselor and helped his INS petition.

37.    In April 1991, the Texas Workforce Commission located in Dallas Texas referred the "Plaintiff" to several job opportunities for a behavioral science position, but none were successful. His own job searches also yielded no results, making the process daunting and discouraging.

38.    Between year 1990 and 2000, this period was marked by economic expansion and paradoxically an increase bias in hiring, which diminished the "Plaintiff's" hope of attaining a job with his major.

39. **The bias hiring managers hurt the "Plaintiff" so much for years it was not easy to shoulder it when the regulatory system collapsed on him instead of helping him.**

40. In 1999, the Plaintiff purchased a food store in Fort Worth, Texas. Unfortunately, the store was the target of an armed robbery which on March 3, 2000, resulted in substantial losses for the Plaintiff which is attached hereto as Exhibit -5 includes four pages.

41. In May 2000, the Plaintiff left Texas and recorded his memories of Dallas City. This move was permanent which is attached hereto as Exhibit-6.

42. After two years, in March 2002, the robbers killed Plaintiff's business partner, Tadese Gobena, at the same Fort Worth food store mentioned earlier.  This was another heartbreaking loss; however, Texas swift justice was ultimately served.

43. Years passed then the plaintiff operated as a self-employed semi-truck driver under the business name "John Transport" since 2013 originating from Columbus, Ohio.

44. The plaintiff conducted both short and long-haul transportation of goods across all 48 states in the U.S.

45.  Since March 2020, businesses in the U.S. have been struggling to continue operations in the face of a global pandemic [The COVID-19].

46. The COVID-19 pandemic has resulted in a recession because of the widespread closures of non-essential businesses enacted to reduce the spread of the virus.

47.    Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act which created the Paycheck Protection Program ("PPP").

48.    The "PPP" is a lending initiative that provides potentially forgivable loans to small businesses to help them withstand the economic impact of the pandemic.

49.    The majority of the loan needs to be allocated for employee salaries and then the remainder can be used for other business expenses like rent and loan payments.

50.    To alleviate the economic effects of the pandemic, President Trump signed CARES Act on March 27, 2020.

51.    The PPP provides a direct incentive for businesses to stay open and keep workers on the payroll. The funds received through this program are forgivable if the money is used for payroll, rent, mortgage interest or utilities.

52.    However, the majority of the funds must go to payroll. Money through the PPP was initially opened to businesses on April 3, 2020. The first $349 billion was exhausted after just two weeks and Congress went on to approve an additional $310 billion to be added to the PPP fund.

**53.**    This second round of funding began April 27, 2020. It was expected to run out faster than the first round, but as of **July 10, 2020, there is still over $100 billion unclaimed.**

54.    The Plaintiff applied on the SBA website for the Paycheck Protection Program (PPP) and did not receive the "forgivable loan."

11

55. On July 9, 2020, the Plaintiff called the "SBA" office to inquire about the status of his application, and SBA Recovery Specialist Richard LaPrad ("LaPrad") answered the phone.

56. "LaPrad" stated that his office had already mailed the decision without providing further details, the Plaintiff informed "LaPrad" that he had not received any mail.

57. LaPrad said he would email it to the Plaintiff, and the conversation ended there.

58. Afterwards, the plaintiff received a decline letter in his email, stating that the decision was based on the Plaintiff's credit history, which is Exhibit-1 "LaPrad's" letter "Acting within the scope of his office or employment" 28 U.S.C. §§ 2671; § 2671 defines "Employee of the government," including federal agency officers 28 U.S.C. §§ 2671-2680.

59. **Upon reading the "SBA's" letter (Exhibit-1), the Plaintiff immediately recognized that the reason that was used to support the "SBA" decision was not genuine** because **the loan was forgivable** and thus the "SBA" violated the U.S Constitution V, XIV and "FTCA" by faulting the art of "Validity" and "Reliability".

60. The Plaintiff's credit history consideration is about his "Debt" meaning the "SBA" was reviewed the Plaintiff's economic history unjustly and then classified and denied the economic award he is entitled. This is the gist of this Compliant.

61. The "PPP" was a forgivable loan when the Plaintiff's application was pending. The loan forgiveness was solid to 100% at the time, and why the "SBA" was forced to consider the individual applicant's "debt history" and denied the Plaintiff the indispensable assistance / relief in the face of the "World

Pandemics". The question the "SBA" has to answer is why that was necessary. Moreover, what was the government's goal or its purpose? Nothing is done without purpose.

62. In a very similar perspective to the plaintiff, the educated communities were loudly voicing their concerns that the "SBA's" PPP forgivable loan had denied a significant number of minorities the assistance they were waiting for in the face of the danger of coronavirus.

63. The National Community Reinvestment Coalition [NCRC] that is based in Washington DC presented research finding with a title called "Lending Discrimination within the Paycheck Protection Program" stated different treatment in PPP along race line which is attached hereto as Exhibit-7 with a total of 17 pages.

64. The finding mentioned above on paragraph 63, emphasized the followings: small businesses are the backbone of the economy and the COVID-19 pandemic hit them the hardest. It is crucial that disaster recovery products such as the PPP are created and made widely available for businesses to remain resilient in the face of economic hardships. However, discrimination plays a significant role in minority and women-owned businesses not being able to access PPP loans. The difference in treatment found in the level of encouragement, product offered, information offered, and information requested are proof that there is still work to be done to ensure all equally qualified business owners have equal access to credit. It is short and powerful presentation.

65.    **Anneliese Lederer**, Director of Fair Lending

Sara Oros, Program Coordinator, Fair Housing/Fair Lending.

In collaboration with:

**Dr. Sterling Bone**, *Professor of Marketing, Utah State University*

**Dr. Glenn Christensen,** *Associate Professor of marketing, Brigham Young University*

**Dr. Jerome Williams**, *Distinguished Professor and Prudential Chair in Business, Rutgers University contributed to the research findings.*

66.    The researcher's investigation using a variety of disciplines were so accurate with 100% although **the researchers failed to show the device** employed by "SBA" that denied so many minorities of their right to get their assisted.

67.    **The black-letter rule indicated that "SBA" tested the economic history minorities and failed them; henceforth, the common denominator that was used for this purpose was "DEBT," a criterion that proved to be exceedingly challenging for minorities to pass. THEN "SBA" VIOLATED ALL FEDERAL LAWS THAT WAS INTENDED TO PROTECT THEM.**

68.    **SHORTLY SOCIAL SCIENCES AND LAWS ARE COMBINED CHALLENGED THE BIAS DISTRIBUTION WHICH THE "SBA" CAN NOT STAND.**

69.    We can see how facts and truths are intertwined with the laws. The detrimental decisions made by the SBA, as illustrated in the 'Declined Letter' (Exhibit 1), have significantly undermined trust in the SBA. This is due to the millions affected by "Debt" consideration which is subjective criterion that was not necessary at all.

70.    The "SBA" violated the equal protection clause (Fifth Amendment, and Fourteen Amendment) because "SBA" the federal law doesn't allowed him to test Blacks and other minorities economic history (especially on the face of Global Pandemics) **subjectively**.

71.    In addition, the letter that the "SBA" sent to Plaintiff which is exhibit -1, was intrinsically contradictory and fatal to its position; the letter topic itself said **"Disaster Assistance."** Here, the Supreme Court allowed us to use a dictionary and then "Disaster" means - according to Merriam-Webster Dictionary, *disaster as* someone or something in a very disordered state or condition, a sudden catastrophic [floods, earthquakes, and other *calamities*] event bringing significant damage, loss, or destruction,  someone or something highly unsuccessful. The "SBA" crushed several protection rights by admitting the existence of a "Global Danger" a term that invokes a sense of urgency and seriousness, and "SBA" knew the disastrous situation yet denied the Plaintiff the indispensable aid for a reason that was not genuine.

72.    The basic pattern of legal reasoning is reasoning by example, (Edward H. Levi, An introduction to legal reasoning, 1949).

73.    We have illustration here:

74.    It's as if a refrigerated truck is delivering cold drinks for free to individuals affected by hurricanes, floods, or tornados but refusing to give those essentials with the account of credit. That's what the "SBA" did when they sent the "Decline" letter to the Plaintiff. Also a reasonable person can look across several

mountains far away the VIII Amendment in a minimum threshold when Paragraph-70 above is contemplated.

75. Also the "SBA" letter said **"We understand the challenges you are facing."** meaning "SBA" was doing it consciously. It said a disaster recovery program and why the unjust "Debt" consideration is helping the recovery?

76. The same Decline letter, captioned that they are Disaster Assistance. Where is the assistant is it not a "Misrepresentation"?

77. The Corona was a world Pandemics and any deprivation violates the V, VIII, XIII and XIV Amendments without stating further.

**78.** The plaintiff is examining the establishment history of the Small Business Administration (SBA). Congress and the Supreme Court have mandated that the SBA assist minority groups. The SBA should have applied these laws during the COVID-19 pandemic and the Paycheck Protection Program (PPP), but it **failed to do so.**

## IV. <u>The Act that established "SBA"</u>

A. The small Business Act (Act), 72 Stat. 384, as amended, 15 U. S. C. § 631 *et seq.,* declares it to be <u>"the policy of the United States that small business concerns, [and] small business concerns owned and controlled by socially and economically disadvantaged individuals, .</u> . . shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." § 8(d)(1), 15 U. S. C. § 637(d)(1). The Act defines "socially disadvantaged individuals" as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities," § 8(a)(5), 15 U. S. C. § 637(a)(5), <u>and it defines "economically disadvantaged individuals" as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged."</u> <u>§ 8(a)(6)(A), 15 U. S. C. § 637(a)(6)(A).</u>

79.    Here "SBA" violated section 8(a)(6)(A) of the statute of 72 Stat. 384, as amended, 15 U. S. C. § 631 *et seq.* that at stated, "The Act defines "socially disadvantaged individuals" as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities,"

80.    "SBA" was strictly and clearly instructed on how to treat minorities but failed in PPP loans. The said act also stated ".... diminished capital and credit

17

opportunities." Nonetheless, in a strikingly opposite way, the "SBA" considered Black and other minorities' "Debt History" with the PPP denial in Question.

81.    The meaning of *Economic disadvantage*

*B. Economic disadvantage under the 8(a) program*

Federal regulations define economically disadvantaged individuals as those "whose ability to compete in the free enterprise system **has been impaired due to diminished capital** and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged." *Id.* § 124.104(a).

82.    "SBA" ignored all that the law ordered him to DO.

83.    <u>**The United States Supreme Court held that racial classifications imposed by either federal, state, or local governments must be analyzed by a reviewing court using a strict scrutiny standard.**</u>

84.    Rule 8(a) (2) of the Federal Rules of Civil Procedure requires that a complaint contain <u>**"a short and plain statement of the claim showing the pleader is entitled to relief."**</u> This "short and plain statement" requires a plaintiff to allege no more than <u>**"the bare minimum facts** </u>necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver, 286 F.3d 437, 439 (7th Cir.2002)* (citing *Beanstalk Group, Inc. v. AM Gen. Corp., 283 F.3d 856, 863 (7th Cir.2002)*). "In evaluating whether a plaintiff's complaint fails to state a claim, a court must take <u>**the plaintiff's factual allegations as true and draw all reasonable inferences in his favor."** </u>*DeWalt,* 224 F.3d at 612 **(**citing *Strasburger,* 143 F.3d at 359**).** Furthermore, "[a] complaint should be dismissed for failure to state a claim only if no relief could be granted under any set of facts that could be proved

consistent with the allegations." *Id.* (internal quotations omitted). Indeed, "if it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b) (6) is inappropriate." *Sanville v. McCaughtry,* 266 F.3d 724, 732 (7th Cir.2001) (quoting *Veazey v. Communications & Cable of Chicago, Inc.,* 194 F.3d 850, 854 (7th Cir.1999)).

The principle that racial discrimination by the government is unconstitutional.

85.    **Statistics** as to racial composition of the defendant's work force serve an important role in judging employment discrimination cases. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977); *Fisher v. Procter & Gamble Manufacturing Co.,* 613 F.2d 527, 543-44 (5th Cir. 1980). "Where gross statistical disparities can be shown, they alone may ... constitute prima facie proof of a pattern or practice of discrimination." *Hazelwood School District v. United States,* 433 U.S. 299, 307-08, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977). *See also Fisher v. Procter & Gamble Manufacturing Co.,* 613 F.2d at 544; *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 225 & n.34 (5th Cir. *422 1974). The class plaintiffs do not need to prove knowing and intentional discrimination to prove a disparate impact case. *International Brotherhood of Teamsters v. United States,* 431 U.S. at 335 n.15, 97 S.Ct. at 1854-1855 n.15; *Scott v. City of Anniston,* 597 F.2d 897, 898 (5th Cir. 1979), *cert. denied* 448 U.S.555 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). Nor must the plaintiffs prove a racially disproportionate impact with "'complete mathematical certainty.'" *James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 337 (5th Cir. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978) (quoting *Vulcan Society of the New York City Fire Department, Inc. v. Civil Service Commission,* 490 F.2d 387, 393 (2d Cir. 1973)).

86.   The clearly erroneous standard of review does not apply to findings of fact premised upon an erroneous view of controlling legal principles. _Parson v. Kaiser Aluminum & Chemical Corp., 575 F.2d 1374, 1382 (5th Cir. 1978),_ cert. denied, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); _Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364, 1372 n.20 (5th Cir. 1974)._ The district court's findings based on its misunderstanding of this legal standard are entitled to no deference. We must undertake an independent analysis of the record before us in light of the correct legal standards.

## V.  FIRST CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS AGAINST THE SBA

### • VIOLATION OF THE FIFTHTH AMENDMENT OF THE U.S CONSTITUTION.
### • RACE AND COLOR DISCRIMINATION IN VIOLATION OF 42 U.S.C.A. § 1983

87.   The Plaintiff repeats and realleges paragraphs 1 through 86 as paragraph 87 of this Complaint as if fully set forth herein.

88.   The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." In numerous decisions, this Court "has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws. _E. g., Hampton_ v. _Mow Sun Wong,_ 426 U. S. 88, 100 (1976); _Buckley_ v. _Valeo,_ 424 U. S. 1, 93 (1976); _Weinberger_ v. _Wiesenfeld,_ 420 U. S. 636, 638 n. 2

20

(1975); _Bolling_ v. _Sharpe,_ 347 U. S. 497, 500 (1954)." _Vance_ v. _Bradley,_ 440 U. S. 93, 95 n. 1 (1979).

It is also true that the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the federal government from invidiously discriminating between individuals or groups. _Bolling_ v. _Sharpe,_ 347 U. S. 497 (1954).

Adarand Constructors, Inc. v. Pena 515 US 200, 115 S. Ct. 2097, 132 L. Ed. 2d 158 ,1995.Justice O'Connor, J., announced the judgment of the Court stating that "Federal agency contracts provide a clause that gives financial incentives to contractors that hire minority-owned small businesses to do subcontracting work. It was a way to remedy the inequality that has typically favored white-owned businesses".

89. Congress provided a vehicle to safeguard these rights in 42 U.S.C. § 1983 which states:

Every person who, under color of any statute, ordinance, regula-
tion, custom, or usage, of any State or Territory or the District of
Columbia, subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action
at law, suit in equity, or other proper proceeding for redress. For the
purposes of this section, any Act of Congress applicable exclusively

to the District of Columbia shall be considered to be a statute of the District of Columbia.

90. The Due Process Clause applies when government action deprives a person of liberty or property as stated in detail in the above paragraphs that the "SBA" used a subjective criterion called "Debt" and denied the Plaintiff the right to equal protection and caused an economic, physical and emotional harms.

91. The "SBA" subjective evaluation of "Debt" was deductively invalid and inductively weak because of the nature of the loan which was "Forgivable loan". The "SBA's" subjective evaluation of "Debt" considerations amounts to discrimination, which has been established as law. It is the "Griggs Law" that is the front burner in this case, even if it is drawn from employment case the same logic can be applied.

92. **"Griggs Law":**

Griggs v. Duke Power Co., 401 US 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971) gave broader expansion for Title VII of the Civil Rights Act of 1964. "WE CAN USE THE COURT'S CONCEPT TO ANY CASE" [The Question of Validity/ Reliability which is, controversial tests is about Subjectivity (We will not offer this job for you because you have bad credit history. What is the economic history of black and other minorities, can they passed this test? **"Griggs Law"** is contrary to decisions on the basis of subjective evaluation.

MR. CHIEF JUSTICE WARREN BURGER delivered the opinion of the Court. The court ruled unanimously Brilliants' Work. **THANK YOU**.

22

In *Griggs v. Duke Power Co.,* 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 163 (1971), the Supreme Court stated that "practices . . . neutral on their face . . . cannot be maintained if they operate to `freeze' the status quo of prior discriminatory employment practices." This circuit has followed *Griggs* in striking down facially nondiscriminatory employment practices which have the practical effect of continuing past injustices. *See Palmer v. General Mills, Inc.,* 513 F.2d 1040, 1042 (6th Cir. 1975); *Afro American Patrolmen's League v. Duck,* 503 F.2d 294, 301 (6th Cir. 1974); *Sims v. Sheet Metal Workers Int. Ass'n, Local 65, supra* at 1026; *Head v. Timken Roller Bearing Co.,* 486 F.2d 870, 879 (6th Cir. 1973).

93.    This strong policy renders racial classifications `constitutionally suspect,' *Bolling* v. *Sharpe,* 347 U. S. 497, 499; and **subject to the `most rigid scrutiny,' *Korematsu* v. *United States,* 323 U. S. 214, 216**; and `in most circumstances irrelevant' to any constitutionally acceptable legislative purpose, *Hirabayashi* v. *United States,* 320 U. S. 81, 100." Id., at 191-192.

94.    Here is the Supreme and appellate courts understanding of the connection of subjective evaluation and "Bias".

95.    The 2th Circuit Court of Appeals; The 5th Circuit Court of Appeals; The 6th Circuit Court of Appeals; The 7th Circuit Court of Appeals; The 8th Circuit Court of Appeals; The 9th Circuit Court of Appeals; The 10th Circuit Court of Appeals and The 11th Circuit Court of Appeals, discredited "SUBJECTIVE EVALUATION" which is the "SBA's baseless criterion. Here you go....

23

96.     "Conclusory allegations that have no factual support are insufficient to create
        a genuine issue of material fact." *Patterson v. General Motors Corp.*, 631 F.2d
        476, 482 (7th Cir.1980), *Patterson v. General Motors Corp.*, 631 F.2d 476, 482
        (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304
        (1981).

97.     A plaintiff can show pretext by revealing "weaknesses, implausibilities,
        inconsistencies, incoherencies, or contradictions in the employer's proffered
        legitimate reasons for its action [such] that a reasonable factfinder could
        rationally find them unworthy of credence and hence infer that the employer did
        not act for the asserted non-discriminatory reason." *Morgan v. Hilti, Inc.*, 108
        F.3d 1319, 1323 (10th Cir.1997)

98.     Courts view with skepticism subjective evaluation methods such as the one
        here. Simms v. Oklahoma ex rel. Department of Mental Health, 165 F.3d 1328.
        (10th Cir.1999) ("Evidence of pretext may include.... the use of subjective
        criteria.");

99.     A plaintiff will usually demonstrate pretext by showing that the employer's stated
        reason for the adverse employment action either (1) has no basis in fact, (2)
        was not the actual reason, or (3) is insufficient to explain the employer's
        action. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir.
        2008) (citing *Manzer*, 29 F.3d at 1084). However, the plaintiff may also
        demonstrate pretext by offering evidence which challenges the reasonableness
        of the employer's decision "to the extent that such an inquiry sheds light on

whether the employer's proffered reason for the employment action was its actual motivation."

100. _Bauer v. Bailar,_ 647 F.2d 1037, 1046 (10th Cir.1981) (although subjective criteria not wrongful per se, "[o]bvious subjective decision making provides an opportunity for unlawful discrimination."); _see also, e.g., Bergene v. Salt River Project Agric. Improvement & Power Dist.,_ 272 F.3d 1136, 1142 (9th Cir.2001) (subjective criteria evidence of pretext); _Lindsey v. Prive Corp.,_ 987 F.2d 324, 327 (5th Cir.1993) (citing with approval _Burrus v. United Tele. Co. of Kansas, Inc.,_ 683 F.2d 339, 342 (10th Cir.1982)) (subjective employment criteria may provide opportunities for unlawful discrimination); _Bell v. Bolger,_ 708 F.2d 1312, 1319-20 (8th Cir.1983)

101. Pretext "means a lie, specifically a phony reason for some action." _Russell v. Acme-Evans Co.,_ 51 F.3d 64, 68 (7th Cir.1995).

102. "'Pretext for discrimination' means more than an unusual act; it means something worse than a business error; `pretext' means deceit used to cover one's tracks." _Clay . Holy Cross Hosp.,_ 253 F.3d 1000, 1005 (7th Cir.2001)

103. The exclusion of "unrelated person" was found to be "irrational": it was not only "imprecise"; it was "wholly without any rational basis." United States Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed. 2d 782 (1973).

104. The exclusion of "unrelated person" was found to be "irrational": it was not only "imprecise"; it was "wholly without any rational basis." United States Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed. 2d 782 (1973).

105. Eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." _Alexander_ v. _Gardner-Denver Co.,_ 415 U. S. 36, 44

(1974). It creates statutory rights against invidious discrimination in employment and establishes a comprehensive scheme for the vindication of those rights.

106.    "Prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating ... criteria); and the use of subjective criteria." *Simms,* 165 F.3d at 1328 (citing *Colon-Sanchez v. Marsh,* 733 F.2d 78, 81 (10th Cir.1984); and *Beaird,* 145 F.3d at 1165). Our review of the record reflects ample evidence of inconsistent treatment of plaintiff, disturbing procedural irregularities, and the use of subjective criteria.

107.    Courts view with skepticism subjective evaluation methods such as the one here. *See Simms,* 165 F.3d at 1328 ("Evidence of pretext may include.... the use of subjective criteria."); *Bauer v. Bailar,* 647 F.2d 1037, 1046 (10th Cir.1981) (although subjective criteria not wrongful per se, "[o]bvious subjective decision making provides an opportunity for unlawful discrimination."); *see also, e.g., Bergene v. Salt River Project Agric. Improvement & Power Dist.,* 272 F.3d 1136, 1142 (9th Cir.2001) **(subjective criteria evidence of pretext); *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 (5th Cir.1993)** (citing with approval *Burrus v. United Tele. Co. of Kansas, Inc.,* 683 F.2d 339, 342 (10th Cir.1982)) (subjective employment criteria may provide opportunities for unlawful discrimination); *Bell v. Bolger,* 708 F.2d 1312, 1319-20 (8th Cir.1983) ("subjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminatory abuse."). ("Evidence indicating that an employer misjudged an employee's performance or qualifications is, of

26

course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination."); _Tyler v. Re/Max Mountain States, Inc.,_ 232 F.3d 808, 814 (10th Cir.2000).

108.  A subjective evaluation, besides being clear and specific, must also be honest. _See id._ That is to say that "[w]hile the business judgment rule protects the sincere employer against second-guessing of the reasonableness of its judgments, it does not protect the employer against attacks on its credibility." _Chapman v. AI Transp.,_ 229 F.3d 1012, 1048 (11th Cir.2000) (Birch, J., concurring in part and dissenting in part); _see also Stern,_ 131 F.3d at 313 ("While we do not second-guess an employer's hiring standards, the reasons for its employment decision, including its alleged reliance on such standards, are subject to scrutiny

109.  A plaintiff makes out a prima facie case for a disparate impact claim by showing "that a facially neutral employment policy or practice has a significant disparate impact." _Brown v. Coach Stores, Inc.,_ 163 F.3d 706, 712 (2d Cir.1998).

110.  "We must assume the truth of the material facts as alleged in the complaint." _Summit Health, Ltd._ v. _Pinhas,_ 500 U. S. 322, 325 (1991).

111.  (The "normal definition of discrimination" is "differential treatment"); see also _Newport News Shipbuilding & Dry Dock Co._ v. _EEOC,_ 462 U.S. 669, 682, n. 22 (1983) (discrimination means "less favorable" treatment).

112.  "SBA" Violated the 5th Amendment of the US constitution of the Plaintiff's federally protected rights by his "Decline Letter empowered by subjective

27

assessment" Exhibit-1. The Due Process Clause applies when government action deprives a person of liberty or property on unreasonable ground.

113. Once a plaintiff establishes a pattern or practice of discrimination, a district court must usually conduct "additional proceedings ... to determine the scope of individual relief." _Teamsters v. United States, 431 U.S. 324, 361, 97 S.Ct. 1843, 52 L.Ed.2d 396_ (1977).

# VI. SECOND CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS AGAINST THE SBA

## • VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S CONSTITUTION.
## • RACE AND COLOR DISCRIMINATION IN VIOLATION OF 42 U.S.C.A. § 1983

114. The Plaintiff repeats and realleges paragraphs 1 through 113 as paragraph 114 of this Complaint as if fully set forth herein.

115. **Passed by Congress June 13, 1866, and ratified July 9, 1868, the 14th Amendment extended liberties and rights granted by the Bill of Rights.**

116. The range of complex problems raised by the simple-sounding command of the 14th Amendment that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

117. The 14th Amendment literally applies only to state action, Judicial interpretation has made it applicable to the federal government as well; Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**118.** The United States Supreme Court held that racial classifications imposed by either federal, state, or local governments must be analyzed by a reviewing court using a strict scrutiny standard.

119. The Due Process Clause applies when government action deprives a person of liberty or property.

120. The Fifth Amendment's Guarantee of Equal Protection, 55 N. C. L. Rev. 541, 554 (1977). *Loving* v. *Virginia,* 388 U. S. 1 (1967), which struck down a race-based state law, cited *Korematsu* for the proposition that "the Equal Protection Clause demands that racial classifications . . . be subjected to the `most rigid scrutiny.'" 388 U. S. at 11. The various opinions in *Frontiero* v. *Richardson,* 411 U. S. 677 (1973), which concerned sex discrimination by the Federal Government, took their equal protection standard of review from *Reed* v. *Reed,* 404 U. S. 71 (1971), a case that invalidated sex discrimination by a State, without mentioning any possibility of a difference between the standards applicable to state and federal action. *Frontiero,* 411 U. S., at 682-684 (plurality opinion of Brennan, J.); *id.,* at 691 (Stewart, J., concurring in judgment); *id.,* at 692 (Powell, J., concurring in judgment). Thus, in 1975, the Court stated explicitly that "[t]his Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger* v. *Wiesenfeld,* 420 U. S. 636, 638, n. 2; see also *Buckley* v. *Valeo,* 424 U. S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment"); *United States* v. *Paradise,* 480 U. S. 149, 166, n. 16 (1987) (plurality opinion of Brennan, J.)

121.    ("[T]he reach of the equal protection guarantee of the Fifth Amendment is coextensive with that of the Fourteenth").

122.    It is axiomatic that due process "is flexible and calls for such procedural protections as the particular situation demands."

123.    Section 1983 serves as a vital tool in protecting individual liberties and ensuring governmental accountability.

124.    In its pertinent part 42 U. S. C. § 1983, reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper Proceeding for redress".

**125.**    In cases under § 1983, "under color" of law has consistently been treated as the same thing as the "state action" required under the Fourteenth Amendment. See, e. g., _Smith_ v. _Allwright,_ 321 U. S. 649; _Terry_ v. _Adams,_ 345 U. S. 461; _Simkins_ v. _Moses H. Cone Memorial Hospital,_ 323 F. 2d 959 (C. A. 4th Cir.), cert. denied, 376 U. S. 938; _Smith_ v. _Holiday Inns,_ 336 F. 2d 630 (C. A. 6th Cir.); _Hampton_ v. _City of Jacksonville,_ 304 F. 2d 320 (C. A. 5th Cir.), cert. denied, 371 U. S. 911; _Boman_ v. _Birmingham Transit Co.,_ 280 F. 2d 531 (C. A. 5th Cir.); _Kerr_ v. _Enoch Pratt Free Library,_ 149 F. 2d 212 (C. A. 4th Cir.), cert. denied, 326 U. S. 721.

126.    The injury in cases of this kind is that a "discriminatory classification prevent[s]

the plaintiff from competing on an equal footing." _Northeastern Fla. Chapter,_
_Associated Gen. Contractors of America_ v. _Jacksonville,_ 508 U. S. 656, 667 (1993).

127.    "SBA" violated the XIV Amendment, the Equal Protection Clause and color laws
and deprived the Plaintiff of his rights on his **purely subjective appraisals of his**
**economic history.**

128.    Once a plaintiff establishes a pattern or practice of discrimination, a district court
must usually conduct "additional proceedings ... to determine the scope of
individual relief." _Teamsters v. United States,_ 431 U.S. 324, 361, 97 S.Ct. 1843,
52 L.Ed.2d 396 (1977).


# VII. THIRD CLAIM FOR RELIEF AND SUPPORTING FACTUAL
# ALLEGATIONS AGAINST THE SBA

## • THERE WAS INJURY INVOLVED
## [ECONOMIC, PHYSICAL AND EMOTIONAL]
## • FEDERAL TORT CLAIMS ACT ("FTCA")
## •28 U.S.C. § 1346(b)

### 7.1    ECONOMIC INJURY HAS INVOLVED FOLLOWING "SBA" PPP
### DENIALON UNREASONABLE GROUND

129.    The Plaintiff repeats and realleges paragraph1 through 128 as paragraph 129 of
this Complaint as if fully set forth herein.

31

130.    The "Plaintiff" was compelled to shut down his transport business ["John Transport", registered business, in Ohio] on January 8, 2022. The last transport was completed by "John Transport" for Amazon was on January 10, 2022 and the Amazon load database referenced as "115NYXBSL" additionally, the Transport carrier's authority was revoked by the Federal Motor Carrier Administration on May 6, 2022 by the "Plaintiff's" request is attached as Exhibit-8 (Two Pages).

131.    Despite ceasing operations on January 10, 2022, the Plaintiff continued to pay "Progressive Commercial Insurance" for four months until his insurance policy expired on May 26, 2022. He maintained this payment in accordance with "pay your vendor" theory.

132.    The economic slowdown caused by the pandemic forced the "Plaintiff" to rely on his business account to cover wage losses, which severely limited his financial resources. Ultimately, this led to the closure of the "Plaintiff's" business, that the "SBA" is responsible.

133.    The economic harm caused by the "SBA" led to the "Plaintiff's" injuries, which resulted to Physical illness and emotional distress over the past three years.

134.    As explained in the preceding paragraphs, the COVID global pandemic significantly hampered the Plaintiff's business operations. The Plaintiff often drove his truck and trailer without securing a load, as many existing load contracts were canceled. This was due to the accounting staff responsible for preparing shipping paperwork and the drivers tasked with loading the trailer

frequently not reporting to work; transfer loads from manufacturing often did not arrive to the shippers on the schedule making loads unavailable. Transportation logistics rely on coordinated teamwork, and the absence of any single component can disrupt the entire transport operation—and it did.

135.  Even during non-global pandemics, the SBA is required to assist minority businesses, as explained below in paragraph 136. However, it has faced criticism regarding its distribution of assistance during pandemics.

136.  The small Business Act (Act), 72 Stat. 384, as amended, 15 U. S. C. § 631 *et seq.,* declares it to be "the policy of the United States that small business concerns, [and] small business concerns owned and controlled by socially and economically disadvantaged individuals, . . . shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." § 8(d)(1), 15 U. S. C. § 637(d)(1). The Act defines "socially disadvantaged individuals" as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities," § 8(a)(5), 15 U. S. C. § 637(a) (5).

137.  After the SBA denied economic support to the plaintiff, his transportation business became increasingly complex due to economic damaging waves from unexpected sources. Below is the list.

138.  A load broker stole about $5,000, plus lost wages later refusing to pay even after a court order was issued is attached as Exhibit-9.  Amazon denied a $7,000 payment to the "Plaintiff" despite the weekly contract was being

33

performed correctly is attached as Exhibit-10. In year 2018 Autoking Trucking, located in Wyoming, MI, took over $8,000 from the plaintiff's wages and was unwilling to prove the account discrepancy when confronted. In 2021 Schneider Transport [the nation #1 transport] refused to pay the "plaintiff" / "John Transport" an amount of $3,000 stating that the signed agreement was not correct breaching the contract they prepared. There were several account confusions, smaller but many and was hard to do with limited capital. The Schneider Transport case will be resolved, and the plaintiff plans to work with them soon. The same is true for Amazon as well.

139. On November 2, 2023, for example Gabriel Scott, an owner-operator with a three-truck fleet, reported that he had been trying to collect payment from a transport broker called TQL for almost five months. Frustrated with the situation, he decided to take action by driving his semi-truck and trailer to the broker's office that is located in Cincinnati, OH to demand his $8000 is attached here as [Exhibit-11].

140. Wage theft and accounting errors and/or confusion are common in semi-truck transport. Every single day there is a written contract to be performed. Owner-Operators and fleet owners need substantial capital to offset these headwinds.

141. On May 2021, the "Plaintiff" moved to a second level of establishing a small, non-asset transportation business with a fleets of four is attached here as Exhibit-12; was contributing a lot to the businesses. However, the load situation with Amazon became problematic. The load board became less active and was

unable to assign enough loads to sustain the "Plaintiff's" fleet operations. These challenges ultimately led to its closure. The team was composed of a minority group.

142. The economic injuries ultimately led to the Plaintiff's physiological and emotional injuries as detailed in Section 7.2 below, which is supported by medical evidence and is clearly traceable to the SBA's wrongdoing which can be taken as the final straw **in** the said catastrophe.

143. The injury in cases of this kind is that a "discriminatory classification prevent[s] the plaintiff from competing on an equal footing." _Northeastern Fla. Chapter,_ . _Associated Gen. Contractors of America v. Jacksonville, 508 U. S. 656, 667 (1993)._

144. Once a plaintiff establishes a pattern or practice of discrimination, a district court must usually conduct "additional proceedings ... to determine the scope of individual relief." _Teamsters v. United States, 431 U.S. 324, 361, 97 S.Ct. 1843 52 L.Ed.2d 396 (1977)._

## 7.2  SBA'S CAUSED; PHYSIOLOGICAL AND PSYCHOSOMATIC INJURIES SUSTAINED BY THE "PLAINTIFF"

145. As explained in Chapter VII, section 7.1, the economic harm caused by the "SBA" has resulted in significant physical and psychological injuries for the "Plaintiff" that he has fought for a long time.

146. On September 21, 2024, Laboratory results confirmed the presence of an ulcer In the intestine, likely a "peptic ulcer," which damaged the lining of the digestive

tract due to acidic erosion and the breath test result confirm the existence of the ulceration. [Sunrise Medical Laboratories, Inc., 250 Miller Place, Hicksville, NY 11801].

147.    On the same day, September 21, 2024, Pathology Laboratories, Inc., located at 1946 N. 13th Street, Toledo, Ohio 43604, discovered that the "Plaintiff" had high blood glucose levels, and a retest was done on October 30, 2024, for his diabetes; unfortunately, the metabolic dysfunction (high blood sugar) persists and shows no improvement and the situation forced the "Plaintiff" to take medication to slow down the metabolic aggression.

148.    In December 28, 2024, the Exact Science laboratory, located at 650 Forward Drive, Madison, WI, report suggested that the "Plaintiff" should undergo a colonoscopy examination based on a previous test.

149.    Other medical conditions include, but are not limited to, iron deficiency anemia (HCT) and shoulder and joint pain resulting from the economic injuries. The "Plaintiff" is currently taking several medications, listed in Exhibit 13, which comprises a total of 17 pages that include laboratory results.

150.    The saga of the "Plaintiff" is not yet over earlier which is In August 2024, the "Plaintiff" ordered medication online from a company called "Livingwell Nutraceuticals." At that time, he did not have medical insurance. Although he experienced muscular pain and other sufferings, but he did not mention his injuries in the Compliant when he filed the case in this Court on July 15, 2024. While the law does not always require medical evidence, however the "Plaintiff"

chose not to mentioned his injuries but today God said "Tell them". Which the "Plaintiff" did.

The Federal Tort Claims Act (FTCA) is a crucial piece of legislation that allows private individuals to sue Federal Agencies or/ and other branches in federal court for most torts committed by persons acting on behalf of the United States.

The FTCA is codified in Title 28 of the United States Code, beginning at Section 1346(b) and continuing with Sections 2671-2680.

151.  28 U.S.C. § 1346(b).  Section 1346(b) provides:

"[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

152.  Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and "render[ed]" itself liable. *Richards* v. *United States,* 369 U. S. 1, 6 (1962).

153.  This category includes claims that are:

"[1] against the Federal Agencies and branches ... [2] for money damages, . . .
[3] for injury or loss of property, or personal injury or death [4] caused by the
negligent or wrongful act or omission of any employee of the Government [5]
while acting within the scope of his office or employment, [6] under
circumstances where the United States, if a private person, would be liable to the
claimant in accordance with the law of the place where the act or omission
occurred." 28 U. S. C. § 1346(b).

154.    A governmental unit in the state is liable for:

**personal injury** so caused by a condition or use of tangible personal or real
property if the governmental unit would, were it a private person, be liable to the
claimant according to *Texas law*. Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept.
1, 1985. Sec. 101.0211.

155.    This law waives the government's <u>sovereign immunity</u> in certain situations,
allowing individuals to seek compensation for injuries or damages. Gonzalez v.
United States, 814 F.3d 1022, 1029 (9th Cir. 2016) (citing Conrad v. United
States, 447 F.3d 760, 765–66 (9th Cir. 2006); Ochran v. United States, 117 F.3d
495, 500-01 (11th Cir. 1997); and Kelly v. United States, 924 F.2d 355, 358,
360–61 (1st Cir. 1991)).

156.    The Supreme Court reiterated the elements a plaintiff must demonstrate to
satisfy Article III's standing requirements:

A. They must show a concrete injury in fact.

B. They must show the injury was fairly traceable to the defendant's conduct.

C. That a favorable decision could redress them for their injuries.

Which the "Plaintiff" satisfied and the "SBA" is responsible in rehabilitating this Individual.

157. Once a plaintiff establishes a pattern or practice of discrimination, a district court must usually conduct "additional proceedings ... to determine the scope of individual relief." _Teamsters v. United States, 431 U.S. 324, 361, 97 S.Ct. 1843, 52 L.Ed.2d 396_ (1977).


## VIII. FIFTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS AGAINST THE "SBA"
### • MISREPRESENTATION


158. The Plaintiff repeats and realleges paragraph1 through 157 as paragraph 158 of this Complaint as if fully set forth herein.

159. Misrepresentation through the act of making a false statement can take many forms. "SBA's" letter which is Exhibit-1 stated the followings **"We understand the challenges you are facing."** meaning "SBA" was doing it consciously.

160. The Exhibit-1 or the Decline letter, captioned that they are "Disaster Assistance". Where the assistant is? Is it not a "Misrepresentation"?

161. The "Black Letter Rule": Exhibit-1 is a Material Misrepresentation"

162. "A material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." _Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282_

(Tex.1994); _DeSantis v. Wackenhut Corp._, 793 S.W.2d 48*48 670, 688

(Tex.1990), _cert. denied_, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775

(1991); _see also Stone v. Lawyers Title Ins. Corp._, 554 S.W.2d 183, 185

(Tex.1977). A promise of future performance constitutes an actionable

misrepresentation if the promise was made with no intention of performing at the

time it was made. _Schindler v. Austwell Farmers Coop._, 841 S.W.2d 853, 854

(Tex. 1992).

163.   In a Material Misrepresentation.

164.   The representation was false.

165.   The "SBA" knew or should have known that the representation was false.

166.   That the Misrepresentation was made with the intention that the plaintiff rely on

it

167.   That the plaintiff did rely on the Misrepresentation.

168.   That the plaintiff suffered harm as a result of "SBA's" Misrepresentation.

169.   "SBA" misrepresented what is called "Debt" and also their promises of "disaster

recovery" and work against the "PPP's" forgivable loan and thus violated

Federal tort laws of "Misrepresentation".

**170.**   Once a plaintiff establishes a pattern or practice of discrimination, a district court

must usually conduct "additional proceedings ... to determine the scope of

individual relief." _Teamsters v. United States_, 431 U.S. 324, 361, 97 S.Ct.

1843, 52 L.Ed.2d 396 (1977)

Dated this 9th of June, 2025.

Respectfully submitted

Alemayehu Getachew
3982 Powell Road # 144
Powell Ohio 43064
getachewalex@yahoo.com
614) 616-2144
*Plaintiff*

# IX. <u>RELIEF REQUESTED. [Part-1]</u>

Before the Plaintiff presents the relief, there are points he wants to clarify for the Court's consideration.

## 9.1.1 <u>This case is not before this Court by accident.</u>

Once an individual recognized her/his rights has been violated and then compiling a complaint requires education and some legal training.

In 1979, two years after class interrupted by civil turmoil the Plaintiff attended a three- credit-hour course titled "Logic" at Haile Selassie University, which later became known as Addis Ababa University. The course was taught by a Canadian professor named Sumner, who provided the "Plaintiff" with a foundation in understanding reasoning, and then four-year college education and over seven years white collar work by the year 1990 when the "Plaintiff" came to the U.S.

In 2003, the Plaintiff began studying civil procedure, and then Tort, Employment, Constitutional and other areas of law independently, without any assistance. He is also familiar with using the Westlaw and LexisNexis websites "it is like building brick by brick" often over time, with individual, small steps to achieve the desired goal is attached hereto as Exhibit-14 (8 pages).

## 9.1.2 **The "Plaintiff" is disingenuously categorized as "Bad Credit"**

In year 1990 the "Plaintiff" moved to Dallas Texas, U.S.A with a very good credential as noted above on paragraph 9.1.1 Despite this, the Plaintiff was denied several job opportunities that matched his education and experience. He was then informed that he had bad credit, facing a harsh reality as stated in the SBA's Letter. (Exhibit-1). This classification mentioned in the exhibit-1 is the result of a turbulent Journey and subterfuge for which the "Plaintiff" is not responsible. Not only is he a good person, but the "Plaintiff" maintains good credit standing, as indicated in the fact book, especially when a reasonable person considers Exhibit 14, Exhibit 12, and other relevant exhibits included in the complaint. The Plaintiff has consistently paid his drivers correctly and ensured that all insurance premiums were paid in full. These actions demonstrate trustworthiness and should be taken into account for specific decisions. Unfortunately, these consideration [Totality of the Circumstances] were disregarded, this, and has caused has caused injury to the Plaintiff in multiple ways.

Chief Justice John Marshall revered individual rights in Marbury v. Madison [5 U.S. 137 (1 Cranch) (1803]. When he stated: "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." Id at 163.

### 9.1.3    The "Plaintiff" has made significant contributions to Thousands of Manufacturing and shipping businesses, success For thirteen years.

The trucking industry plays a vital role in the United States economy, serving as the backbone of the nation's supply chain and facilitating the movement of goods and products across the country that include Manufacturing, Agriculture, Construction and retail.

The "Plaintiff" in this context transported two or three loads a week, with an average weight of Thirty Thousand (30,000) pounds per load, traveling across the 48 states. These loads also include hazardous materials or dangerous goods without experiencing a single product loss or damage or causing a single accident over the road and driving defensively meaning correcting other driver's error. The "Plaintiff" has provided efficient and reliable transportation for over one million miles, which is no small feat is attached hereto as Exhibit-15.

The trucking industry significantly contributes to the U.S. GDP, representing a large portion of the country's economic output by reaching areas where other forms of transport cannot.

However, it is important to acknowledge that the industry faces serious safety challenges, including fatal accidents is attached hereto as Exhibit-16 (20 pages) This issue needs to be addressed.

The Plaintiff, who has worked in the industry for over a decade, has gathered data and intends to create a safety guidance manual and truck safety thesis. The Plaintiff believes that the Federal Motor Carrier Safety Administration

known as (FMCSA) does not currently have this information available. The aim

is to educate the transport industry on how to minimize, if not completely

eliminate, fatal accidents. The primary focus will be on the sales of uninspected

used trucks and the standards of truck driving schools and more.

As explained above the Plaintiff has plans to prepare a hand out that aims to

reduce fatal accidents in a significant manner.

9.1.4    The "Plaintiff" has received numerous requests for assistance from governments,

Law enforcement, veteran associations, his church and other charities, including

relatives of "Tadesse Gobena" who was "Plaintiff's" business partner and killed in

Fort Worth, Texas by store robbers is truly overwhelming to seeing them lining

up to share this case's outcome.

The "Plaintiff" has been receiving over a hundred letters and emails each month

from various governmental bodies, Red cross, charities, save the children,

Veterans Associations, and others for monetary assistance as well as

suggestion/comment/ ideas on the most pressing national issues from

organizations and the "Plaintiff" is both humbled and willing to fulfill these

requests to the best of his ability is attached hereto as Exhibit-17 (20

pages)


## RELIEF REQUESTED. [Part-2]

## BEFORE THE MONITERY RELIEF


## GENERAL OVERVIEW OF WHAT SETTLMENT IS ABOUT?

## [OPTIONAL TO READ IF SKIPPED, PLEASE GO TO

# PAGE- 46  ON MONITERY RELIEF]

Here we need an insightful point about settlement in a business context. All knowledge from the Social sciences (ART) —such as Law, Governmental Affairs (political science) History, Psychology, Sociology, etc.)—as well as natural sciences (including Medicine, Chemistry, Physics, etc.)  Who assisted the ART, should Sphere-headed towards **"Business First"** principle on how that business can continue to thrive even when it faces challenges or disruptions from various corners. The theory behind viewing settlement, whether in or out of court, as "moving forward together" stems from the fundamental nature of business relationships and the desire for continued operation and profitability.

A. **Beyond the Immediate Dispute**: business often involves ongoing or potential future relationships. Suppliers, distributors, partners, even competitors in some instances, may **need to coexist** within the same industry. The Concept of "We are in this together"

B. **Focus on Long-Term Viability:** Businesses are typically driven by the need for long-term sustainability and profitability.

C. **Preserving Reputation:** Public legal battles can be detrimental to a company's image and brand.

45

## MONITERY RELIEF REQUESTED

### SECTION ONE:

9.2.1 The "Plaintiff" is a U.S. citizen is attached hereto as Exhibit-18 and is seeking

compensatory damages under Section 1983 (42 U.S.C. § 1983), which is part

of the Civil Rights Act of 1871. This act is particularly relevant because it does not

impose a cap on damages, making it suitable to mirror compensatory damages of

Title VII of the Civil Rights Act of 1964, which establishes a compensatory amount

of $300,000 as defined in the Civil Rights Act of 1991; however, considering the

inflation, the monetary value today, is different. Henceforth, according to U.S

Labor Department inflation calculator [Exhibit-19] it is equivalent to $694,224.24

as of March 2025.

**9.2.2  Compensatory Damages requested" by the "Plaintiff" in this section is**

**Equals to $694,224.24 [Six Hundred Ninety-Four Thousand Two Hundred**

**Twenty-Four Dollars and Twenty-Four Cents]**

**9.2.3**    The award of punitive damages is determined by the Court, considering the

"SBA's" resources including highly educated "SBA's" employees knew or should

Have known to prevent the said violation but has chosen not to act.

9.2.4.  **"Plaintiff's" direct physical Injuries suffered which the "SBA" is**

**Responsible that is Exhibit-13.**

The least amount compensation for the metabolic dysfunction and its associated

emotional distress the "Plaintiff" has endured is equals to half [50%] of what

was discussed above in Paragraph 9.2.2. equals to $347,112.12 [Three

46

Hundred Forty-Seven Thousand One Hundred Twelve and twelve Cents].

9.2.5   This case is more than "Subjective Evaluation" meaning the above monetary award will first redress the "Plaintiff" and his families who has suffered physical, economic, and emotional injuries and then a portion of the funds will support the parties mentioned above in Section 9.1.4, Page-43 while the remaining funds will be allocated to individuals identified in the same section. Additionally, some of the relief will be used to aid to those individuals that the "Plaintiff's" was well aware and who were once U.S. Cold War allies, including, college kids, retired high school Teachers and Journalists in the mid and late 1980's, who have not had enough fortune to achieve a better life and are still living in Ethiopia.

9.2.6   With the remaining money the Plaintiff intends to pursue international Business/ International Trade in his former Country, Ethiopia; Exhibit-20, (two Pages) after taking some CEO/GM training in International Trading.


## THE SECOND SECTION OF THE RELIEF IS THE LOAN

## SOUGHT FROM THE "SBA"


**In this section, the Plaintiff is requesting the Court to order approval of the Government-backed SBA's 7(a) loan for his semi-truck business, "John Transport," which was unjustly denied by the SBA on unreasonable grounds. Also the Plaintiff immigrated to the United States in 1990, bringing with him 16 years of education and seven years of white-collar work experience. Despite being qualified and available for work, he faced numerous employment opportunities being denied. He was inaccurately classified as having a "bad credit history," which was not the case. The Court needs to redefine and discredit the potential adverse position by the SBA regarding the 7(a)**

**discredit the potential adverse position by the SBA regarding the 7(a) loan borrowers' qualification. Taking this step is the right thing to do, and pave the way the to the relief center for decades of unjust treatment the Plaintiff has experienced. This aligns with our principles of "DEMOCRACY".**

9.3.1    The "Plaintiff" is respectfully requesting the court to authorize SBA's most Commonly known 7(a) loan, is attached here as Exhibit-21 to make the" Plaintiff's**" fleet Complete** which is Exhibit-**12.**

9.3.2    The Plaintiff's semi-truck transport business has suffered due to actions taken by the SBA, Amazon, and other small load brokers, (which some of them are not defendants in this case of course) of bias, questionable Bookkeeping practices, coupled with negligence, error which are elaborated on in this complaint from page - 33, Paragraph 138 up to Paragraph 140.

9.3.3.    The Plaintiff should not be considered as having bad credit. Please revisit Paragraph 9.1.2 on page 42 that stated "**The "Plaintiff" is disingenuously categorized as "Bad Credit"** and the supporting evidence that he is not is Exhibit-14 and Exhibit-13 tells all. Furthermore, the Plaintiff has been working diligently, managing business operations efficiently, and has consistently paid his drivers and other services.

9.3.4    In addition the "Plaintiff" is a member of an "insular and discreet" minority group and an affidavit is attached to this complaint.

9.3.5    The "Plaintiff" is member of an economically, socially, and politically disadvantaged group that substantially overlaps with the "insular and discreet" group of course.

9.3.6    The Act that established "SBA" defines "socially disadvantaged individuals" as those who have faced racial or ethnic prejudice or cultural bias due to their identity as members of a group, regardless of their individual characteristics (§ 8(a)(5), 15 U.S.C. § 637(a) (5)). )). Therefore, the entire complaint brought by the Plaintiff addresses this issue, and the Plaintiff believes he deserves it.

9.3.7    The 'SBA' has wronged the Plaintiff, and given the resources he possesses, the "SBA" knew or should have known about the denial in question. Their failure to act demonstrates a lack of reasonable care, in the face of Global Pandemics amounts to gross negligence. Because of failure to take reasonable care the "SBA" injured the "Plaintiff" and he must allow the loan and the "Plaintiff's" history deserves more than that however let him do the roofing if not the ceiling so the "Plaintiff" will form his "Semi-Truck fleet"

9.3.8    On another round the **Plaintiff has received calls** from Texas businesses, expressing a desire to work together to make the Texas economy thrive again. EXCERPT:

GOVERNOR GREG ABBOTT CELEBRATED TEXAS' ECONOMIC SUCCESS AND THE UNIQUE BUSINESS OPPORTUNITIES THAT HAVE PROPELLED THE STATE TO BECOME THE MODERN EMBODIMENT OF THE AMERICAN DREAM AT A NASDAQ, INC. LUNCHEON IN DALLAS."

9.3.9    **The Plaintiff feels honored to have received the invitation, which is attached as Exhibit 22. He plans to relocate his prospective semi-truck fleet to Dallas, Texas, a city / state he favors most and also his immediate family resides since mid-80s. His relatives are all highly**

49

**disciplined and law-abiding citizens.** The "Plaintiff" believes that they are going to assist him in his transport business plan in its first phase.

The aims is to support local businesses by transporting their products, including tanker shipments hazmat loads which are in high demand in Texas. The Texas Trucking Show in Houston on June 24 and June 25, 2023, show cased the importance of trucking in Texas's growing economy is attached as Exhibit-23. Notably, on April 24, 2021, the Plaintiff dispatched his team of semi-truck drivers to haul an Amazon load from Kentucky to Katy, Texas and was not the only one. The relevant Amazon load database # 115FGJYZ4 is attached as Exhibit-24. The Plaintiff's connection to the state of Texas is paramount as summarized on page-6 to Page-7; paragraph-24 up to Paragraph-28 of this Compliant and the "Plaintiff" has chosen Texas as his home.

9.3.9    To respond to the state of Texas' "You Are Welcome" letter, which is Exhibit -22, the Plaintiff respectfully requests that the Court to consider the wishes of the businesses and the Plaintiff's intention to respond positively, as well as the injuries the Plaintiff has sustained harm over decades, in economy, physical, and psychological well beings and his place in the racial classification spectrum.

9.3.10    **THE PLAN** for the government backed 7(a) loan.

If the Court allowed the said loan and the SBA kindly cooperate with the Court's order which they should the "Plaintiff" will do the Followings:

A. Establishing a fleet of five semi-trucks and five 53-foot trailers, either brand new or used (model year 2021 or newer). The fleet will be based in Dallas, Texas, with all trucks marked as "MACK" fleet.

B. The Plaintiff has a good record in leadership skills, in managing the fleet, of recruiting, coaching in driving, training in rules and regulation that governed the transportation industry safety, so all these talents is attached here as Exhibit -25 (ten pages).

C. Operating a semi-truck is a challenging profession that demands accurate calculations. It is essential to consider both driver and mechanical fitness as key variables. When Referring to Exhibit 26, which includes ten pages outlining common issues encountered on our highways. The Plaintiff has the ability to provide coaching to his drivers, and the fleet is poised to make significant contributions.

D. When managing a fleet of heavy commercial transportation, safety is the top priority. Nothing is more important than ensuring operations are conducted safely. The "Plaintiff" drove one million miles without incidents, which is no easy feat.

E. Once the Court approves the estimated loan for five semi-trucks and their 53-foot trailers, along with the necessary operating capital, the Plaintiff will immediately begin operations in Dallas, Texas. The trucks will be purchased from "MACK", a well-known company recognized for the durability of its equipment.

F. The "Plaintiff" is also asking any other relief that this Court deems just and

proper.

Dated this 13th of June, 2025.


Respectfully Submitted

Alemayehu Getachew
3982 Powell Road # 144
Powell, OH 43064
getachewalex@yahoo.com.
(614) 616-2144 (Cell)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Alemayehu Getachew

## DEFENDANTS
U.S Small business ADM.

**(b)** County of Residence of First Listed Plaintiff    Union
*(EXCEPT IN U.S. PLAINTIFF CASES)*

RECEIVED

JUN   2025

CLERK U.S. DISTRICT COURT

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
None

Attorneys *(If Known)*
No

**4-25CV-645-0**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
US Constitution V th, XIV Amend. 42 USCA 1983
Brief description of cause:
Amendment violation on subjective evaluation/criterion that led to bias decision making that sustained monetary, physical and mental inguries to the

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
To be determined by COURT

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 4/28/2025
SIGNATURE OF ATTORNEY OF RECORD: Alemayehu Getachew

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

June 17, 2025

United States District Court

Clerk of Courts / Karen Mitchell
501 West 10th Street, Room 310
Fort Worth, TX 76102-3673

RE: Attached Please find Civil Compliant and three supporting motions

including the Court's fee of a check for $ 405.00.

Sincerely.

Alemayehu Getachew

3982 Powell Rd

Powell OH 43065

Plaintiff

Court fee payment
enclosed.

Alex G.





**UNITED STATES POSTAL SERVICE** ®

SHIPPING ENVELOPE
FOR DOMESTIC AND INTERNATIONAL USE

Alemayehu Getachew

3982 Powell Rd

Powell OH 43065

RECEIVED
JUN 2 4 2025
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

PRIORITY MAIL®

US POSTAGE PAID
$20.50

PRIORITY MAIL®

EXPECTED DELIVERY DAY: 06/23/25

SHIP TO:
STE 310
501 W 10TH ST
FORT WORTH TX 76102-3641

USPS SIGNATURE® TRACKING #

9510 8148 3943 6171 1450 14

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**TRACKED ▪ INSURED**

PS00000133100

EP14 December 2024
OD: 15 x 11.625

**United States District Court**

**Clerk of Courts**
**501 West 10th Street, Room 310**
**Fort Worth, TX 76102-3673**

PLASTIC BAG

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE